UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
ANNE GRANATA,

    *Plaintiff*,


   v.        **<u>MEMORANDUM & ORDER</u>**

ANDREW M. SAUL, Commissioner of   18-cv-5197 (KAM)
Social Security,[1]

    *Defendant*.
---------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

    Plaintiff Anne Granata ("Plaintiff") appeals the final decision of the Commissioner of Social Security (the "Commissioner"), which found her not disabled within the meaning of the Social Security Act (the "Act") at any point between November 10, 2014, the alleged onset of her disability, and December 31, 2016, her date last insured, and thus not eligible for Disability Insurance Benefits ("DIB") under Title II of the Act for that period.  Before the court are the parties' cross-motions for judgment on the pleadings.  For the reasons set forth below, the Commissioner's motion for judgment on the pleadings is DENIED, Plaintiff's motion is GRANTED in part and DENIED in part, and this action is REMANDED for further proceedings consistent with this Memorandum and Order.

---

[1] Plaintiff sued Nancy A. Berryhill ("Berryhill") as Acting Commissioner of Social Security.  On June 17, 2019, Andrew M. Saul ("Saul") became the Commissioner of Social Security.  Because Plaintiff sued Berryhill in only her official capacity, Saul is automatically substituted for Berryhill as the named defendant.  *See* Fed. R. Civ. P. 25(d).  The Clerk of the Court shall amend the caption in this case as indicated above.

## Background

This action arises from Plaintiff's application for social security benefits following an injury she sustained at work on October 20, 2014.  Plaintiff, then working as a slot ambassador at a casino, sat on an unstable chair and, when the chair broke, fell to the ground and sustained injuries.  The parties entered a joint stipulation of facts dated May 16, 2019. (ECF No. 21, Joint Stipulation of Relevant Facts from the Certified Administrative Record ("Stip.").)  The Court incorporates the facts contained therein by reference and details only those relevant to this Memorandum and Order.

### I.   Procedural History

On April 15, 2015, Plaintiff, then age 28, filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").[2]  (ECF No. 22, Administrative Transcript ("Tr."), at 28, 147.)  Plaintiff alleged disability beginning November 10, 2014, due to impairments of the lumbar spine and left leg, specifically, lumbar stenosis, lumbar spine impairment, bulging and herniated disc, and left leg impairment.  (*Id.* at 163.)

Following denial of her application, Plaintiff requested a hearing before an Administrative Law Judge.  (*Id.* at 71-84.)

---

[2] Plaintiff filed her application on July 10, 2015.  (Tr. at 147.)  The application was given a protective filing date of April 15, 2015.  (*See id.*)

On July 24, 2017, Plaintiff appeared with a non-attorney representative for a hearing before Administrative Law Judge Charles Woode ("the ALJ").  (*Id.* at 36-59.)  Plaintiff and an impartial vocational expert, Martin Kranitz ("Mr. Kranitz"), testified at the hearing.  (*Id.*)

By decision dated August 15, 2017, the ALJ issued a decision finding Plaintiff not disabled and denying Plaintiff's application for DIB on the grounds that Plaintiff could perform her past work and other sedentary jobs in the national economy. (*Id.* at 16-35.)  The Appeals Council denied Plaintiff's request for review.  (*Id.* at 1-6, 143-46.)  This action followed.

## II.  Relevant Evidence

As noted above, Plaintiff's alleged disability began following her fall from a broken chair in late 2014.  Subsequent to her fall, Plaintiff sought treatment from a number of medical professionals who opined on her ability to return to work.  The following provides an overview of the relevant medical opinions in this action, as well as the testimony of the vocational expert, to the extent it is relevant to determination of the instant cross-motions for judgment on the pleadings.

### a. Medical Opinions

#### i. *Alvin Hershfeld, M.D.*

On November 12, 2014, Alvin Hershfeld, M.D. ("Dr. Hershfeld"), examined Plaintiff.  (*Id.* at 318, 335.)  Dr.

3

Hershfeld diagnosed lumbar derangement and acute pain, and opined that Plaintiff was "totally disabled" for an undetermined period. (*Id.*) MRI studies of the lumbosacral spine conducted by Daniel Schusselberg, M.D., the same day, revealed "a lateral bulge with bilateral neuroforaminal narrowing, lateral recess stenosis[,] and spinal stenosis" at the L2-L3 vertebrae; "a bulging disc" at the L4-L5 vertebrae; and "a central disc bulge with bilateral facet arthropathy and relative spinal stenosis" at the L5-S1 vertebrae. (*Id.* at 326.)

On November 24, 2014, Plaintiff presented to Dr. Hershfeld for a follow-up examination. (*Id.* at 319, 336.) Dr. Hershfeld reiterated his opinion that Plaintiff was "totally disabled" for an undetermined period. (*Id.*) Dr. Hershfeld amended his diagnoses to multiple lumbar bulging discs and lumbar spinal stenosis. (*Id.*)

On December 8, 2014, Plaintiff presented to Dr. Hershfeld for another follow-up examination. (*Id.* at 642.) Dr. Hershfeld noted that Plaintiff's symptoms were moderate, but that there had been a slight worsening of Plaintiff's symptoms since onset. (*Id.*) Dr. Hershfeld noted that Plaintiff's "gait is abnormal" due to severe lower back pain. (*Id.* at 643.) Dr. Hershfeld again assessed lumbar pain with herniated disc and spinal stenosis. (*Id.*)

4

On February 7, 2015, Plaintiff presented to Dr.
Hershfeld for a final follow-up examination.  (*Id.* at 644.)  Dr.
Hershfeld reported that Plaintiff's gait had returned to normal.
(*Id.* at 645.)  In the other direction, Dr. Hershfeld found that
"[t]here is back abnormality on palpation" and "[p]ain on
palpation," and that Plaintiff's "[m]obility is restricted."
(*Id.*)  Dr. Hershfeld noted that Plaintiff was limping.  (*Id.*)

      ii. *Alvin Bregman, M.D.*

On December 2, 2014, Alvin Bregman, M.D. ("Dr.
Bregman"), completed an independent orthopedic examination of
Plaintiff in conjunction with her workers' compensation claim.
(*Id.* at 543-546.)  Plaintiff complained of lower back pain with
radiating pain to her left lower extremity to foot.  (*Id.* at
543.)  Dr. Bregman noted that Plaintiff "has an abnormal gait
and walks on toes and heels with difficulty." (*Id.*)  Dr.
Bregman noted tenderness over the lumbosacral region.  (*Id.*)
With respect to the lumbar spine, Dr. Bregman noted:

> Straight leg raising is positive to 25 degrees on the right
> and positive to 5 degrees on the left.  Voluntary range of
> motion of the lumbar spine reveals forward flexion 0 to 30
> degrees (0 to 90 degrees normal), extension 0 degrees (0 to
> 30 degrees normal), right lateral flexion 0 to 10 degrees
> (0 to 45 degrees normal) and left lateral flexion 0 to 10
> degrees (0 to 45 degrees normal).

> Neurological examination revealed patellar deep tendon
> reflexes to be 2+ on the right and 1+ on the left.
> Achilles deep tendon reflexes reveal to be 1 + bilaterally.
> Muscle strength of the lower extremities is graded at 5/5

> on the right and 4/5 on the left.  There is claimed
> radiation of pain, numbness and tingling on the left.

(*Id.* at 544-45.)  Dr. Bregman diagnosed internal derangement of

the lumbar spine.  (*Id.* at 545.)  Dr. Bregman opined that

Plaintiff had a "moderate partial disability" and could return

to work "with limitations of no lifting, pushing[,] or pulling

objects greater than 15 pounds."  (*Id.*)

On May 11, 2015, Plaintiff presented to Dr. Bregman

for an independent orthopedic re-examination in connection with

her workers' compensation claim.  (*Id.* at 560-63.)  Plaintiff

complained of "lower back pain radiating to the left lower

extremity with tingling of the left foot," along with

"difficulty bending and lifting heavy objects."  (*Id.* at 561.)

Dr. Bregman again noted that Plaintiff "has an abnormal gait and

walks on toes and heels with difficulty."  (*Id.* at 562.)  Dr.

Bregman also reiterated his finding that "[t]here is tenderness

noted over the lumbosacral region."  (*Id.* at 562.)  With respect

to the lumbar spine region, Dr. Bregman made substantially

similar, if slightly more restrictive, findings as to flexion.

(*Id.*)  Dr. Bregman diagnosed internal derangement of the lumbar

spine with lumbar radiculopathy.  (*Id.*)  Dr. Bregman found that

Plaintiff had "a moderate disability" and could return to work

"with limitations of no lifting, pushing or pulling of objects

greater than 15 pounds."  (*Id.* at 563.)  The duration of the

limitations was indeterminate in length.  (*Id.*)  Plaintiff returned to Dr. Bregman on October 5, 2015, but Dr. Bregman's diagnoses and findings remained unchanged.  (*Id.* at 566-69.)

On May 31, 2016, Dr. Bregman examined Plaintiff and made diagnoses and impressions largely consistent with those made at prior visits.  (*Id.* at 574-76.)  Dr. Bregman observed that Plaintiff's abilities were now more limited and opined that Plaintiff "should not return to work at this time and should avoid . . . lifting, pushing[,] or pulling of objects greater than 5 points."  (*Id.* at 576.)  Dr. Bregman treated Plaintiff again on October 25, 2016 and March 6, 2017.  (*Id.* at 598-99, 604-06.)  On both occasions, Dr. Bregman noted that Plaintiff had no active range of motion in her lumbar spine; opined that Plaintiff should not return to work, and should avoid lifting, pushing, and pulling objects greater than five pounds; and indicated that Plaintiff had "a marked disability."  (*Id.*)

iii. *Norman Sveilich, D.O.*

On December 22, 2014, Plaintiff presented to Norman Sveilich, D.O. ("Dr. Sveilich"), in conjunction with her workers' compensation claim.  (*Id.* at 328-31.)  Plaintiff's gait and stance were normal.  (*Id.* at 330.)  Examination of Plaintiff's lumbosacral spine revealed some tenderness on palpation.  (*Id.* at 329.)  Dr. Sveilich also noted lumbar flexion to 45 degrees, extension to 15 degrees, and bilateral

rotation and lateral flexion to 30 degrees.  (*Id.* at 330.)
Plaintiff's straight-leg raising tests were negative.  (*Id.*)
Dr. Sveilich noted that X-rays of Plaintiff's lumbosacral spine
revealed no evidence of any osteoarticular abnormality.  (*Id.*)
Dr. Sveilich further noted that the "[c]linical [exam] and
office x-ray do not agree with MRI [study taken in November
2014] at all."  (*Id.*)  Dr. Sveilich diagnosed lower back pain
herniated nucleus pulposus ("HNP") at the L3-S1 vertebrae,
lumbar and lower back sprain, and lumbar strain.  (*Id.*)  Dr.
Sveilich assessed total temporary disability.  (*Id.* at 331.)

     iv. *Andrew Cordiale, D.O.*

     On January 9, 2015, Andrew Cordiale, D.O. ("Dr.
Cordiale"), examined Plaintiff in connection with her lower back
pain complaints.  (*Id.* at 304-05.)  Plaintiff's musculoskeletal
physical examination revealed restricted lumbar ranges of
motion: flexion to 20 degrees (normal is 90 degrees); extension
to 10 degrees (normal is 40 degrees); and bilateral turning to
35 degrees (normal is 60 degrees).  (*Id.*)  Examination of
Plaintiff's lumbar spine revealed abnormal coordination and
antalgic gait.  (*Id.* at 305.)  Dr. Cordiale found full motor
strength in Plaintiff's left quadriceps, left hamstring, right
tibialis anterior, and right extensor hallucis longus ("EHL").
(*Id.*)  Plaintiff demonstrated 4/5 strength in her hips, right
hamstring, left tibialis anterior, and left EHL.  (*Id.*)

Dr. Cordiale diagnosed lumbar radiculopathy. (*Id.*)
Dr. Cordiale opined that Plaintiff should refrain from any
activity that exacerbates symptoms, such as heavy lifting,
carrying, or bending. (*Id.*) Examinations by Dr. Cordiale on
March 19, 2015 and May 7, 2015 revealed similarly restricted
lumbar ranges of motion and similar strength, sensation, and
reflexes. (*Id.* at 307, 309.) Dr. Cordiale's opinion remained
identical to his initial assessment. (*Id.*)

> v. *Jeffrey Chacko, M.D.*

On January 19, 2015, Jeffrey Chacko, M.D. ("Dr.
Chacko"), examined Plaintiff in connection with her complaints
of lower back pain. (*Id.* at 288.) Dr. Chacko's examination
revealed restricted lumbar range of motion, with flexion to 60
degrees (normal is 90 degrees), extension to 15 degrees (normal
is 40 degrees), and bilateral turning to 40 degrees (normal is
60 degrees). (*Id.* at 289.)

Dr. Chacko diagnosed lumbar radiculopathy and lumbar
spondylosis. (*Id.* at 290.) Dr. Chacko opined that Plaintiff
should refrain from any activity that exacerbates symptoms, such
as heavy lifting, carrying, or bending. (*Id.*) Plaintiff
presented to Dr. Chacko for follow-up visits on February 15,
2015 and April 14, 2015. (*Id.* at 292-94, 298-300.) Dr.
Chacko's assessments of Plaintiff's range of motion, strength,

sensation, and reflexes, and his overall assessment, remained
unchanged from his initial evaluation.  (*Id.*)

　　　　　vi. *Vincent Leone, M.D.*

　　　　On May 29, 2015, Plaintiff presented to Vincent Leone,
M.D. ("Dr. Leone"), for a second opinion on her back pain.  (*Id.*
at 392-394.)  Plaintiff noted that her pain was "10 out of 10,"
and indicated that her symptoms occur while walking, sitting,
standing, and lifting.  (*Id.* at 392.)  Dr. Leone observed that
Plaintiff's gait was antalgic.  (*Id.* at 393.)  Dr. Leone also
noted that Plaintiff's lumbar range of spine was limited and
painful.  (*Id.*)  Dr. Leone, however, found that Plaintiff
exhibited full motor strength in her bilateral lower
extremities, and her senses were intact.  (*Id.*)  Dr. Leone
assessed lower back pain.  (*Id.*)

　　　　　vii. *Sebastian Lattuga, M.D.*

　　　　On July 13, 2015, Sebastian Lattuga, M.D. ("Dr.
Lattuga"), examined Plaintiff in connection with her lower back
pain.  (*Id.* at 416-17.)  Dr. Lattuga's examination of
Plaintiff's lumbar spine revealed abnormal coordination and
antalgic gait.  (*Id.* at 417.)  Dr. Lattuga noted restricted
lumbar range of motion, with flexion to 15 degrees (normal is 90
degrees), extension to 5 degrees (normal is 40 degrees), and
left and right turning to 30 degrees (normal is 60 degrees).
(*Id.* at 416-17.)  Dr. Lattuga also noted full motor strength in

Plaintiff's left quadriceps, left hamstring, right tibialis anterior, and right EHL.  (*Id.* at 417.)  Plaintiff demonstrated 4/5 strength in her hips, right hamstring, left tibialis anterior, and left EHL.  (*Id.*)

Dr. Lattuga diagnosed lumbar radiculopathy.  (*Id.*) Dr. Lattuga opined that Plaintiff should refrain from any activity that exacerbates symptoms such as heavy lifting, carrying, or bending.  (*Id.*)  Plaintiff presented to Dr. Lattuga for follow-up examinations on October 23, 2015, January 15, 2016, April 4, 2016, and July 18, 2016.  (*Id.* at 310-11, 422-23, 312-13, 314-15.)  Dr. Lattuga noted slight fluctuations in Plaintiff's pain and range of motion across these subsequent examinations, but all other findings and Dr. Lattuga's opinion remained unchanged.  (*Id.*)

   viii.  *Demetrios Mikelis, M.D.*

On January 1, 2017, Plaintiff presented to Demetrios Mikelis, M.D. ("Dr. Mikelis"), in connection with her lower back pain.  (*Id.* at 316-17.)  Plaintiff indicated that her pain was "9.5:10."  (*Id.* at 316.)  Dr. Mikelis noted that Plaintiff had abnormal coordination and antalgic gait.  (*Id.* at 317.) Plaintiff also had restricted lumbar range of motion, with flexion to 20 degrees, extension to 10 degrees, and bilateral turning to 15 degrees.  (*Id.*)  Plaintiff's motor exam remained unchanged from prior examinations with Dr. Lattuga.  (*See id.*)

Dr. Mikelis diagnosed lumbar herniated nucleus pulposus with radiculopathy. (*Id.*) Dr. Mikelis opined that Plaintiff should refrain from any activity that exacerbates symptoms, including heavy lifting, carrying or bending. (*Id.*)

On March 3, 2017, Plaintiff presented to Dr. Mikelis for a follow-up examination. (*Id.* at 321-22.) Plaintiff's pain had decreased to 6 out of 10, and her flexion range of motion had improved to 25 degrees. (*Id.*) All other examination findings remained consistent with the prior examination, and Dr. Mikelis' opinion remained unchanged. (*Id.* at 322.)

   b. <u>Vocational Expert Testimony</u>

Mr. Kranitz, a vocational expert, testified at Plaintiff's hearing at the Commissioner's request. (*Id.* at 51-58.) Mr. Kranitz noted that evidence in the record reflected Plaintiff's past work as a: ticket agent, Dictionary of Occupational Title ("DOT") 248.382-010, SVP-4 and sedentary (medium, as typically performed); waitress, DOT 211.477-030, SVP-3 and light; and slot ambassador (arcade attendant), DOT 342.667-014, SVP-2 and light. (*Id.* at 52.)

Mr. Kranitz testified that an individual with Plaintiff's age and education, limited to sedentary work with the additional limitations of occasional stooping, kneeling, crouching, climbing, pushing/pulling controls with their lower extremities, and never climbing ladders, ropes, or scaffolds,

could perform Plaintiff's past work as a ticket agent as the job was described in the DOT (but not as performed[3]).  (*Id.* at 53.) Mr. Kranitz also testified that this individual could find work in the national economy as an information clerk, DOT 237.367-046, SVP-2; inspector, DOT 739.687-182, SVP-2; and assembler, DOT 700.687-062, SVP-2.  (*Id.*)

Mr. Kranitz further testified that this individual could perform Plaintiff's past work as a ticket agent, or find work in the national economy, even with the additional limitation that she be required to have the opportunity to elevate the left leg to waist level, for 15 to 30 minutes at a time, three to four times a day.  (*Id.* at 55-56.)  Mr. Kranitz, however, stated that there would be no available jobs in the national economy if the hypothetical were changed from occasional stooping to never stooping.  (*Id.* at 56-58.)

## Standard of Review

Unsuccessful claimants for disability benefits may bring an action in federal court seeking judicial review of the Commissioner's denial of their benefits.  42 U.S.C. §§ 405(g), 1383(c)(3).  The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have

---

[3] Mr. Kranitz briefly inquired of Plaintiff how much weight she was required to lift as a ticket agent.  (Tr. at 52.)  Plaintiff responded that she had to lift 50 pounds, as she was required to lift checked luggage.  (*Id.*)

justifiably reached a different result. *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir. 2012). Rather, "'[a] district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error.'" *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Inquiry into legal error requires the court to ask whether "'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

## Discussion

### I.   The Commissioner's Five-Step Analysis of Disability Claims

A claimant must be "disabled" within the meaning of
the Act to receive disability benefits.  *See* 42 U.S.C. §§
423(a), (d).  A claimant qualifies as disabled when she is
unable to "engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment
which can be expected to result in death or which has lasted or
can be expected to last for a continuous period of not less than
12 months."  *Id.* § 423(d)(1)(A); *Shaw*, 221 F.3d at 131–32.  The
impairment, or combination of impairments, must be of "such
severity" that the claimant is unable to do her previous work or
engage in any other kind of substantial gainful work.  42 U.S.C.
§ 423(d)(2)(A).

The regulations promulgated by the Commissioner
prescribe a five-step sequential evaluation process for
determining whether a claimant meets the Act's definition of
disability.  *See* 20 C.F.R. § 404.1520.  The Commissioner's
process is essentially as follows:

> The first step of this process requires the [Commissioner]
> to determine whether the claimant is presently employed.
> If the claimant is not employed, the [Commissioner] then
> determines whether the claimant has a "severe impairment"
> that limits [his] capacity to work.  If the claimant has
> such an impairment, the [Commissioner] next considers
> whether the claimant has an impairment that is listed in
> Appendix 1 of the regulations.  When the claimant has such
> an impairment, the [Commissioner] will find the claimant

disabled.  However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the [RFC] to perform [his] past relevant work.  Finally, if the claimant is unable to perform [his] past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work.

*Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).

The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.  *Burgess*, 537 F.3d at 128 (internal quotation marks and citations omitted).  "[B]ecause a hearing on disability benefits is a nonadversarial proceeding, [however,] the ALJ generally has an affirmative obligation to develop the administrative record."  *Id.* (internal quotation marks omitted).  "The burden falls upon the Commissioner at the fifth step of the disability evaluation process to prove that the claimant, if unable to perform her past relevant work [and considering her residual functional capacity, age, education, and work experience], is able to engage in gainful employment within the national economy."  *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence

of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)).  If the Commissioner finds a combination of impairments, the Commissioner must also consider whether "the combined effect of all of [a claimant's] impairment[s]" establish the claimant's eligibility for Social Security benefits.  20 C.F.R. § 404.1523(c); *see also id.* § 416.945(a)(2).

## II.   The ALJ's Application of the Five-Step Analysis

Using the five-step sequential process to determine whether a claimant is disabled as mandated by 20 C.F.R. § 416.971, the ALJ made the following determinations:

At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of November 10, 2014 through her date last insured of December 31, 2016."[4]  (*Id.* at 21.)

At step two, the ALJ determined that Plaintiff suffered from the severe impairments of lumbar degenerative disc disease and obesity.  (*Id.* at 22.)

---

[4] The ALJ noted that although Plaintiff attempted to return to her old job as a slot ambassador for a three-month period in late 2015, she was unable to sustain her old job and did not earn sufficient wages to constitute substantial gainful activity.  (Tr. at 21-22.)

At step three, the ALJ determined that Plaintiff did not have an impairment, or combination of impairments, which met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, though the ALJ considered Listing 1.04 (Disorders of the Spine). (*Id.*)

With respect to Plaintiff's RFC, the ALJ determined that Plaintiff could perform "sedentary work . . . except that she can occasionally stoop, kneel, crouch, crawl, climb ramps or stairs, and push or pull controls with her left lower extremity. She cannot climb ladders, ropes or scaffolds. She requires the opportunity to elevate her leg below waist level for 15-30 minutes at a time, 3-4 times per day." (*Id.*) The ALJ accorded limited weight to the opinions of Dr. Bregman and Dr. Hershfeld. (*Id.* at 26.) The ALJ did not expressly note the weight given to the remaining medical opinions. (*See generally id.* at 26-27.)

At step four, the ALJ determined that Plaintiff could perform her past relevant work as a ticket agent "as generally performed." (*Id.* at 27.) Although the ALJ found that Plaintiff could perform her past relevant work, he proceeded to step five and made alternative findings. (*Id.* at 28.)

At step five, the ALJ noted that Plaintiff could perform jobs available in substantial numbers in the national economy of Information Clerk, DOT 237.687-182; Inspector, DOT 739.687-182; and Assembler, DOT 700.687-062. (*Id.* at 29.)

Based on the foregoing analysis, the ALJ found Plaintiff not disabled within the meaning of the Act at any time from November 10, 2014, the alleged onset date, through December 31, 2016, the date last insured.  (*Id.*)

## III.   The ALJ's Error in Applying the Five-Step Analysis

"[A]n ALJ should defer to 'to the views of the physician who has engaged in the primary treatment of the claimant.'" *Cichocki v. Astrue*, 534 F. App'x 71, 74 (2d Cir. 2013) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)).[5]  "However, '[a] treating physician's statement that the claimant is disabled cannot itself be determinative.'"  *Id.* (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).  "Rather, 'a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)' will be given 'controlling weight' if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'"  *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)).

---

[5] The Commissioner has revised its rules to eliminate the treating physician rule, and ALJs are now to weigh all medical evaluations, regardless of their sources, based on how well supported they are and their consistency with the remainder of the record.  *See* 20 C.F.R. §§ 404.1520b; 416.920c.  Claims filed before March 27, 2017, however, are still subject to the treating physician rule, *see id.* § 404.1527(c)(2), and the Court accordingly applies the rule to this case, as Plaintiff filed her claim on April 15, 2015.  *See, e.g.*, *Conetta v. Berryhill*, 365 F. Supp. 3d 383, 395 n.5 (S.D.N.Y. 2019).

"An 'ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion,' including: '(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). "The ALJ must then 'comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.'" *Id.* (quoting *Burgess*, 537 F.3d at 129).

In this analysis, although an ALJ should generally explain the weight given to each opinion, remand is not required where application of the proper legal standards would lead to the same conclusion previously reached. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010). Failure to consider the opinion of a treating physician "ordinarily requires remand to the ALJ for consideration of the improperly excluded evidence, at least where the unconsidered evidence is significantly more favorable to the claimant than the evidence considered." *Id.* at 409. "Remand is unnecessary, however, '[w]here application of

20

the correct legal standard could lead to only one conclusion.'"
*Id.* (quoting *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)).
For instance, in *Zabala*, the court found it was harmless error
to "the exclude[] evidence [was] essentially duplicative of
evidence considered by the ALJ," as there would be no reasonable
likelihood that consideration of the unconsidered report would
change the outcome.  *Id.* at 409-10 (noting that "[t]he
[unconsidered] report [was] largely identical to a [different]
report by the same doctor, which the ALJ did consider," and
which set forth substantially identical findings).

Here, the ALJ noted, incorrectly, that Plaintiff
visited her "primary care" doctor, Dr. Hershfeld, on only three
occasions.  (Tr. at 26-27.)  Plaintiff argues that the ALJ
failed to properly evaluate the opinions of Drs. Cordiale,
Chacko, Lattuga, Mikelis, and Sveilich and did not provide any
explanation for his failure to do assign them any weight.  (ECF
No. 18, Pl.'s Mot. for J. on the Pleadings, at 14-15.)  The
Commissioner appears to concede that the ALJ failed to expressly
accord any weight to these doctors' opinions, but argues that
any error was harmless as "the opinions of each of these doctors
were identical, and the ALJ properly incorporated [their]
findings into his RFC finding."  (ECF No. 20, Comm'r's Mot. for
J. on the Pleadings, at 10.)  The Commissioner's arguments are
unavailing.

*First*, the Commissioner appears to argue that the ALJ did not err because the unconsidered opinions are duplicative. The opinions of Drs. Chacko, Cordiale, Lattuga, Mikelis, and Svelich may be identical and duplicative of one another.  None, however, was actually weighed by the ALJ, and these opinions remain unconsidered.  To the extent the Commissioner argues the unconsidered opinions are duplicative of opinions which the ALJ considered but accorded little weight (e.g., the opinions of Dr. Hershfeld or Dr. Bregman), the ALJ failed to provide any reason for according little weight to each of the unconsidered opinions, whatever the reason.

*Second*, and more substantially, the Commissioner argues that the ALJ's RFC determination incorporates the limitations set forth in the unconsidered opinions, namely, that Plaintiff refrain from any activity that exacerbates symptoms, such as heavy lifting, carrying, or bending.  (*See, e.g.*, Tr. at 305 (Dr. Cordiale).)  The Commissioner is correct that the ALJ's RFC determination accounts for Plaintiff's limitations as to heavy lifting and carrying by restricting Plaintiff to sedentary work, which by its very requirements involve lifting no more than 10 pounds.  *See* 20 C.F.R. § 404.1567(a).  But the ALJ's RFC determination does *not* expressly account for Plaintiff's ability to bend in light of medical findings that examining physicians

22

found limited ranges of motion, and Plaintiff's ability to do so is not meaningfully addressed in the ALJ's decision.

The Commissioner, nevertheless, argues that the ALJ incorporated the bending restriction noted by the ostensibly unconsidered opinions by limiting Plaintiff to "occasional stooping."  (Comm'r's Mem. at 11.)  This argument reads too much into the ALJ's decision.  The ALJ's RFC determination presumed that Plaintiff could occasionally stoop, crouch, kneel, and crawl.  (*See* Tr. at 22.)  This appears to be inconsistent with the unconsidered opinions' determination that Plaintiff should "refrain from any activity that exacerbates symptoms such as . . . bending" (*see, e.g.*, *id.* at 305 (Dr. Cordiale); *id.* at 290 (Dr. Chacko); *id.* at 417 (Dr. Lattuga)), given that almost all of the aforementioned activities would require bending.  Indeed, these opinions indicate that Plaintiff should refrain from bending entirely, but the ALJ sought no clarification from Plaintiff's treating physicians as to whether occasional bending would be permissible, or whether the bending restriction meant that Plaintiff could never stoop.

Because the ALJ did not address Plaintiff's ability to bend in any meaningful way in the RFC determination itself, the court cannot ascertain whether the ALJ: (1) assessed no such limitations, or only some limitations; or (2) failed to assess whether such limitations were present, and the impact on her

functioning.  *See* SSR 96-8P, 1996 WL 374184, at *4 ("[A] failure
to first make a function-by-function assessment of the
individual's limitations or restrictions could result in the
adjudicator overlooking some of an individual's limitations or
restrictions."); *Welch v. Comm'r of Soc. Sec.*, No. 17-CV-6764
(JS), 2019 WL 4279269, at *3 (E.D.N.Y. Sept. 10, 2019).  The
court cannot find that the ALJ's RFC finding is supported by
substantial evidence.  Moreover, Mr. Kranitz testified that,
given Plaintiff's RFC, as determined by the ALJ, Plaintiff would
be unable to work at any position available in the national
economy if she could "never" stoop.  (*Id.* at 56 ("Q.  [I]f I
change . . . stooping from occasional to never, you're saying
there're no jobs?  A.  Yes, Your Honor.").)  This appears to be
in line with SSA regulations.  *See, e.g.*, SSR 96-9P, 1996 WL
374185 ("A *complete* inability to stoop would significantly erode
the unskilled sedentary occupational base and a finding that the
individual is disabled would usually apply . . . ." (emphasis in
original)).

     Consequently, remand is warranted for further
development of the record and explanation as to why the ALJ's
decision did not expressly account for Plaintiff's other medical
findings, and her bending restriction, as noted by the
unconsidered opinions cited above.  *Cichocki v. Astrue*, 729 F.3d
172, 177 (2d Cir. 2013) ("Remand may be appropriate . . . where

an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."). Because the court remands the action on the basis of the foregoing failure to consider medical opinions, and because a proper consideration of all medical opinions will likely influence the ALJ's determination as to Plaintiff's credibility and must be considered in determining whether Plaintiff met or equaled a listing, the court need not consider Plaintiff's remaining arguments regarding those issues at this time.

## Conclusion

Federal regulations explicitly authorize a court, when reviewing decisions of the Social Security Administration, to order further proceedings when appropriate.  Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard," *Rosa*, 168 F.3d at 82–83 (quoting *Pratts*, 94 F.3d at 39) (internal quotation marks omitted), particularly where further findings or explanation will clarify the rationale for the ALJ's decision, *Pratts*, 94 F.3d at 39.  As the court finds that the ALJ erred in his decision, and that further development and consideration of the record, and clarification of the rationale of the ALJ's decision, are necessary to facilitate proper review, this case

is remanded for further proceedings in accordance with this

Memorandum and Order.

**SO ORDERED.**

Dated:     Brooklyn, New York
           April 22, 2020

                              _____
                                        /s/
                              Hon. Kiyo A. Matsumoto
                              United States District Judge